No. 35,338

In re Estate of J. S. Cantrell, Deceased (MYRTLE L. CANTRELL, *Appellant,* v. PEARL C. LAIDLAW, as an Individual and as Administratrix of the Estate of J. S. Cantrell, Deceased, and V. S. CANTRELL, *Appellees*).

(119 P. 2d 483)

Opinion filed December 6, 1941.

*B. J. Lempenau* and *W. E. Atchison*, both of Topeka, for the appellant.

*James Malone, Clarence Malone*, both of Topeka, *E. E. Lamb* and *W. E. Hogueland*, both of Yates Center, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal involves the validity of an antenuptial contract, and grows out of the following:

J. S. Cantrell was married to Myrtle L. Ball on October 7, 1926, and they lived together as husband and wife until the death of J. S. Cantrell, intestate, on May 23, 1940. After his death his daughter, Pearl C. Laidlaw, was appointed and duly qualified as the administratrix of his estate. During the course of the administration of the estate a controversy arose with the widow respecting her interest in the estate, and a petition was filed in the probate court alleging the execution of an antenuptial contract between J. S. Cantrell and Myrtle L. Ball (Cantrell), and praying for an order that Myrtle L. Cantrell be not entitled to participate in any of the assets of the estate by reason of the contract. The terms of the contract not being in dispute, we summarize it. The contract bears a title, viz.:

"Antenuptial that property of the intended husband be separated, and that neither have any interest in the property of the other."

It was dated October 7, 1926, and made between J. S. Cantrell and Myrtle L. Ball, and stated that a marriage was intended between the parties, and in view of the fact that after their marriage, in the absence of any agreement to the contrary, the legal relation and powers as regards property may be other than those they desire to have apply to their relations, powers and capacity, that it was agreed that during the marriage each of them should be and continue completely independent of the other as regards the enjoyment and disposal of all property owned by them at the time of marriage, and that each should hold and enjoy his or her separate property in the same manner as if the proposed marriage had never been celebrated, and that upon the death of either, the survivor should not have and

would not assert any claim, interest, estate or title, under the laws of any state, because of survivorship, in the property of the deceased, and the survivor relinquished to. the heirs, administrators, executors and assigns of the deceased any share that he or she would be entitled to as the surviving husband or wife, and agreed to execute and deliver to the heirs, etc., of such deceased party all necessary instruments to make effectual his or her agreements contained in the contract. The contract was signed by both parties and witnessed by "John H. Crider, Fort Scott, Kansas."

To this petition Myrtle L. Cantrell filed an answer, in which she specifically denied that before her marriage to J. S. Cantrell she had executed the antenuptial contract and "said respondent alleges and states that the said J. S. Cantrell mentioned to her, some days prior to their marriage, that his then children requested that he enter into a contract with respondent, whereby she was to receive none of his property in case of his death;" and that she heard nothing more of it until sometime after they were married, and that by reason of the contract having been signed after they became husband and wife, the same was void and of no effect and contrary to public policy. She further alleged that when the contract was presented to her that J. S. Cantrell told her she was well provided for; that she did not read the contract; that she was unfamiliar with legal documents; that J. S. Cantrell did not advise her as to the extent of his property and she had no knowledge thereof, and had she known he owned extensive real estate and personal property she would not have signed the contract. She also alleged that J. S. Cantrell was a very wealthy man and she had nothing except a small amount of money from an insurance policy, all of which was known to J. S. Cantrell, and by reason thereof the contract was without consideration or mutuality and was unfair, inequitable and unconscionable and should be set aside. She also alleged that J. S. Cantrell had made a will giving her some interest in real estate in Topeka, but that the will had been revoked, and that the execution of the will was an abandonment and cancellation of the antenuptial contract. She also alleged that certain described real estate, being the same described in the above-mentioned will, was the homestead, and she requested that it be set aside to her, together with a widow's allowance out of the personal estate.

As the result of hearing in the probate court Myrtle L. Cantrell was denied any interest in J. S. Cantrell's estate except the right to

use the homestead, and from that judgment she appealed to the district court, which rendered its judgment that the contract was a valid and binding agreement and enforceable in determining the rights of the parties in the estate of J. S. Cantrell. Thereafter Myrtle L. Cantrell's motion for a new trial was denied and she perfected her appeal to this court.

Apparently at the trial in the district court there was no question concerning the widow's homestead rights, and at the argument in this court we were informed that such rights were not in dispute. (See *Watson v. Watson,* 106 Kan. 693, 189 Pac. 949.) The sole question presented is the validity of the antenuptial contract.

There is no dispute that when the parties were married on October 7, 1926, J. S. Cantrell was seventy-two years old and Myrtle L. Ball was forty-six years old; that he had three living children by a previous marriage; and that she was a widow with no children. J. S. Cantrell first met Myrtle L. Ball at the home of her sister in Pittsburg about 1921, and did not meet her again until about a week prior to their marriage, and they met but twice prior to the marriage. The record is silent as to when they agreed to marry or as to any arrangement or agreement to marry, although her answer states that he told her some days prior to their marriage, which must have been at their second meeting, that his children wanted him to make the contract, now under consideration, whereby she would receive no part of his property in the event of his death. The record is likewise silent as to who prepared the contract.

Appellees' witness, John H. Crider, testified he was a practicing attorney in Fort Scott for many years and was probate judge of Bourbon county, Kansas, on October 7, 1926, an office he had held since 1919; that he had no independent recollection of the matter but that the names of the parties were written into the body of the contract in his handwriting and that he had signed the contract as a witness. He was permitted to testify it was his usual and regular custom and practice to ask parties who appeared before him if they understood instruments which they executed and to inform them to see they knew the contents of the instruments they signed, and he had no doubt he either read the contract to the parties or inquired of them whether they knew its contents or effect.

Mrs. Cantrell testified that she and Mr. Cantrell went to the probate court together and were married, and after the marriage ceremony had been performed the contract was produced; that she had

no independent advice as to the contract or its terms; that the contract was never read to her, and the reason she signed her name as "Myrtle L. Ball" to the contract was because Mr. Crider told her to. On rebuttal Mr. Crider positively denied making any such statement. Mrs. Cantrell received a copy of this contract and kept it until after Mr. Cantrell's death, when she destroyed it.

With respect to the property owned by the parties just prior to the marriage, the evidence showed that Myrtle L. Ball had $1,500 in cash and no other property, and that J. S. Cantrell had a new Dodge automobile, value not shown, and about 1,000 acres of land worth possibly $25,000. Apparently he had some other personal property, but its nature or value was not established by the evidence. Appellant offered in evidence the inventory of the J. S. Cantrell estate showing him to have died possessed of an estate amounting to almost $33,000, the bulk of which was personal property. The record discloses that subsequent to the marriage, J. S. Cantrell by four separate deeds conveyed to his children most of the real estate which he owned at the time of his marriage. These deeds expressed a consideration of $1. We are left to infer that the conveyances were gifts. The remaining piece of real estate then owned was sold for a stated consideration of $400. Myrtle L. Cantrell joined as a grantor in each of these deeds.

Myrtle L. Cantrell testified that at the time of the marriage she did not know of any property that J. S. Cantrell owned, either real or personal. There is, however, no contention and no evidence that J. S. Cantrell made any false representations to her concerning his holdings or otherwise misled her. As tending to show that she had knowledge or opportunity to know, on cross-examination she testified that her sister's husband was related in some way to Mr. Cantrell; that she was at her sister's house before the marriage, but she stated nothing was said about Mr. Cantrell's property.

As far as may be necessary other testimony will be referred to hereafter.

Although error is assigned on the admission of certain evidence, the point is not presented by appellant in her brief and is considered to have been abandoned.

The substance of appellant's principal contention as stated in her brief is that for such a contract as we have here to be valid, it must appear that the prospective husband made a full disclosure of the extent, nature and amount of his property, or that the prospective

wife have such knowledge without disclosure; that with such knowledge she voluntarily entered into the contract, and failing such disclosure or knowledge the contract is absolutely invalid. The above contention is coupled with the further contention that when an unreasonable inadequacy or disproportion of the amount to be received by the wife appears, the burden is upon those claiming under the husband to prove that the prospective wife had full knowledge as to his property.

In support of her contentions, appellant directs our attention to *McVicar v. McVicar*, 128 Kan. 394, 278 Pac. 36, where it was held that such contracts must be understandingly and fairly made, and to *Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537, where it was held that any imposition or designed concealment by reason of which either party might be misled or defrauded would operate to defeat the contract, and to textbook citations and authorities from other jurisdictions, but placing principal weight upon the holding of this court in *Watson v. Watson*, 104 Kan. 578, 180 Pac. 242, syl. ¶ 5, viz.:

"An antenuptial contract must be upheld unless some fraud, deceit or unreasonable inadequacy or disproportion appears. If the latter appear, the presumption of fraud is raised, and the burden is on the husband or those claiming under him to show that the wife was fully informed as to his property."

Using as a premise that under the instant contract Mrs. Cantrell was to receive no part of her husband's property and therefore she received no equitable share of her husband's estate, it is contended the evidence fails to show that those claiming under the husband sustained the burden of showing that Mrs. Cantrell was fully informed as to the nature, extent and value of the Cantrell's estate at the time the contract was made, and hence the contract must be stricken down. The argument ignores in part that portion of the particular holding in the Watson case that the contract must be upheld unless fraud, deceit or unreasonable inadequacy appears.

The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching. (See *Dunsworth v. Dunsworth*, 148 Kan. 347, 352, 81 P. 2d 9, and cases cited.) Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of

the contract encourage a separation of the parties. (*Neddo v. Neddo*, 56 Kan. 507, 44 Pac. 1.) It may here be said that there is nothing about the present contract which warrants application of the last rule.

In *Hoard v. Jones*, 119 Kan. 138, 150, 237 Pac. 888, a review of many of our decisions was made and it was said that while good faith should characterize such contracts, they are not only recognized, but are favored by the law when fairly and intelligently made and when just and equitable in their provisions, and that some force and effect must be given to contracts voluntarily executed.

A leading case in this state is *Hafer v. Hafer*, supra. There a widower fifty-six years of age, with a family of seven children, and worth $14,000, made an antenuptial contract with a maiden lady twenty-six years of age who had $40 and two cows. Under the contract the intended wife was to receive a child's share. At the husband's death his property was worth $19,000. In that case it was contended the contract was void because it was not shown the husband had made disclosure of his financial condition. After discussing the good faith of the contract, the situation attending its execution, etc., and calling attention to the fact there was no claim the husband had misrepresented to or concealed from his intended wife, his financial condition and that she had never expressed complaint or dissatisfaction, it was said:

"The mere fact, that he may not have disclosed his assets and liabilities in detail to her, will not, in the absence of anything showing fraud or deceit, invalidate the contract, nor will it raise a presumption of fraudulent concealment; and especially is this so where the terms and provisions of the contract are so manifectly fair and reasonable as in this case." (l. c. 462.)

If the statement from the Watson case heretofore quoted is to be interpreted as appellant argues, and because no provision is made for the prospective wife, there is such presumption of fraud the entire burden of establishing the contract is on those claiming under the husband, the interpretation is too broad, for other circumstances must also be considered. Unreasonable inadequacy of a provision for the intended wife, or disproportion of the share she will receive, cannot be concluded from the contract alone. What is inadequate or disproportionate can only be determined from a consideration of all the circumstances. Not only is the amount of the husband's property a factor—consideration should be given to the situation of the parties, their respective ages, as compared to each other, their re-

spective property, their family ties and connections, and the whole circumstances leading up to the execution of the contract and their marriage, the question in the end being whether, in view of all the facts, the intended wife was overreached. The cases cited above and those mentioned in them make that clear. And we think that consideration may also be given to the actions and conduct of the parties following the marriage as tending to show the agreement was fairly and understandingly made.

The evidence did not fully support appellant's answer. It need not be repeated at length, but it did show that immediately prior to the marriage Mr. Cantrell was seventy-two years of age and had three grown children, and that he was possessed of property worth at least $25,000; and that the intended Mrs. Cantrell was forty-six years of age, had no children, and was possessed of property worth $1,500. There is no evidence about their becoming engaged, but appellant's pleadings make it clear that she knew before the marriage that an antenuptial contract was to be made whereby she would take no part of his estate if he predeceased her. The evidence shows that she executed the contract whereby each party stood in the same relation to the other with respect to property rights. That she executed such a contract freely is admitted and that she understood what she was doing is not denied. It is not contended, and there is no evidence that Mr. Cantrell misrepresented anything about his situation, either as to family or property, or that he misled or deceived her in any particular.

Appellant ignores the fact that under the contract she was to get nothing, and that viewed from that point it made no difference whether her intended husband was in needy, moderate or affluent state so far as property was concerned. Her contention, if good, means that an antenuptial contract similar to that being considered would not be good unless she was given such a share of her intended husband's estate as would leave a court of equity in position to say that she received an equitable share. Under such construction good faith in the making of the contract is immaterial. Disproportion of shares, where property is to be shared, would and should challenge attention, but disproportion is not the sole test, especially where it is shown there is no active concealment or fraudulent representation by either party, and the contract is made freely to carry out an understanding previously made.

The record discloses that Mrs. Cantrell received a copy of this con-

tract and preserved it until after the death of her husband. We need not dwell on what implications the trial court may have made from this fact, in view of the claim the contract was void and unenforceable. She joined as grantor in deeds whereby he conveyed to his children all of the real estate he owned at the time of the marriage with the exception of one piece, which was sold for a stated consideration of $400. There is no evidence that she objected to any of these conveyances, and that all of them but the last were in accord with the contract cannot be gainsaid. Only after her husband's death and when he could not say to the contrary did she say that the agreement was not fully effective, and only then did she contend she was not bound because he did not tell her what he owned when they were married.

The entire matter was presented to the trial court, which saw the witnesses, observed their demeanor, heard the whole story, and its judgment holding the contract valid has implicit in it a finding that in view of the whole of the circumstances the contract was freely and understandingly made by the parties, free from fraud or deceit, and that the mutual provisions of the contract did not create or. result in unreasonable inadequacy of provision for the intended wife.

In the above we have not considered appellant's contention that J. S. Cantrell renounced and abandoned the contract. This is based on a claim that about December 1, 1937, Mr. Cantrell made a will which contained some provision for his widow so long as she lived or remained a widow, the residue of his estate to go to his children. The record is meager and there is no evidence that Mr. Cantrell ever told his wife anything about a will or that she knew of its existence until after his death. The document as offered in evidence had been mutilated by cutting off certain parts so that the full benefit to the widow was no longer ascertainable, the name of the executor was cut off as were the names of the witnesses. Appellant does not contend the will is good—only that by making it Mr. Cantrell abandoned the antenuptial contract. Our attention is directed to *Dunsworth v. Dunsworth,* supra, where it was held that a previously executed will was revoked by an antenuptial contract, and to other authority that whether there has been abandonment depends upon all the circumstances tending to prove intention to rescind or abandon. The Dunsworth case is not in point; there the question was whether, under the statute, a will was revoked. As abstracted, there is nothing shown except that possibly at one time Mr. Cantrell may

have executed a valid will. It cannot be said that sole fact would warrant or support a finding of abandonment of the contract or rescission of it. It may be observed that had Mr. Cantrell made a will and left Mrs. Cantrell certain property it would not have been inconsistent with the contract, under which he had a right to make such disposal of his property as he wished. The trial court's finding the contract was valid and binding necessarily included a finding the contract was not abandoned or rescinded and it has not been made to appear the judgment is wrong.

Appellant's contention the judgment is not supported by the evidence is predicated on matters heretofore discussed and it need not be further noticed.

The judgment of the trial court is affirmed.