No. 39,016

In the Matter of the Estate of John B. Beeler, Deceased. LOUISE BEELER, *Appellant,* v. RICHARD G. BEELER and JACK B. BEELER as Administrators of the Estate of John B. Beeler, Deceased; and RICHARD G. BEELER and JACK B. BEELER, as heirs at law of John B. Beeler, Deceased, *Appellees.*

(262 P. 2d 939)

Opinion filed November 7, 1953.

*W. S. Norris, F. C. Norton,* and *H. L. Smither,* all of Salina, were on the briefs for the appellant.

*A. W. Relihan, T. D. Relihan,* and *Terry E. Relihan,* all of Smith Center, and *Geo. E. Teeple,* of Mankato, were on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This appeal involves the validity of a postnuptial contract. John B. Beeler and Louise Beeler were married August 15, 1934. It was John's second and Louise's fourth marriage. They lived together as husband and wife on a farm until the early part

of the year 1949 when, due to marital difficulties, they began negotiations and later entered into a postnuptial contract, after which they separated and lived apart but were never divorced. John B. Beeler died intestate January 26, 1951. His two surviving sons by a former marriage filed a petition in the probate court of Jewell county, for the appointment of administrators of the estate, setting up the fact that their father died intestate, and left surviving him as his only heirs at law, Louise Beeler his widow, and Richard Beeler and Jack Beeler his sons, alleging in the petition that Louise Beeler, for a good and valuable consideration, relinquished all her right of inheritance in all the property owned by John Beeler at the time of his death, and made a part of the petition the contract entered into between John and Louise on March 14, 1949, and, that by reason of the contract, Louise Beeler had no interest or right of inheritance in the estate of John B. Beeler, deceased. Richard and Jack Beeler were appointed administrators of the estate.

The postnuptial contract was made a part of the petition for the appointment of administrators, the terms of which are not in dispute. Pertinent parts may be summarized as follows:

The contract bears the title, viz, "Post-nuptial Settlement of Financial Affairs and Property Rights." It stated that the parties had lived on certain real property in the county in which John Beeler possessed a life estate, and that they mutually decided to make and effect a full, immediate and complete settlement of their financial affairs and property rights, and to enter into an agreement whereby all the property rights of each party, whether real or personal, belonging to the other party should be forever waived; that each party had made complete explanation of their present financial condition and agreed that the settlement should finally determine the property rights, including the rights of descent and inheritance. John agreed to pay Louise the sum of $15,000, to transfer the title to a 1948 Buick sedan automobile, and to execute his personal note payable to Louise in the sum of $2,250, bearing interest at 5 percent, and to pay and settle all indebtedness owing by either party, up to and including the date of the agreement, including the payment of any claim for taxes due the state of Kansas or to the United States government.

In consideration of the foregoing, Louise agreed to quitclaim all her interest in and to the remaining property, both real and personal, to John including all vested and inchoate rights held by the parties either jointly or separately, and to relinquish to John Beeler, his

heirs, grantees and assigns all her right of inheritance including homestead rights under the laws of Kansas. The contract was lengthy and contained other detailed provisions but they need not be reiterated here, in view of the questions involved.

Louise Beeler, for her claim against the estate, asserted that she was the widow of John Beeler, deceased, and as such was entitled to a one-half interest in the estate of John Beeler at the time of his death, and that she was entitled to her widow's allowance. She admitted the execution of the postnuptial contract as alleged in the petition for appointment of administrator, but contended that the agreement was executed by reason of duress, coercion and oppression, to which she was subjected by John Beeler, and as a result of fraud, deceit and misrepresentation practiced upon her by her then husband; that the said John Beeler misrepresented to her and failed to fully disclose to her his actual financial condition and the extent and value of the property then owned by him; that she did not learn of the true value and extent of his property until after his death; that the contract was not freely, fairly, intelligently or understandingly made by her, and that the same was unjust and inequitable and should by the court be declared null and void and not binding upon her as the widow of John Beeler, deceased.

Issues were framed by the parties and the case was certified to the district court for trial. At the conclusion of the evidence, the case was fully argued to the trial court, including citations of authorities relied upon by the respective parties, and the case was taken under advisement by the court for further consideration. Subsequently, no findings of fact or conclusions of law having been requested, the court rendered its judgment, finding all the issues generally in favor of the administrators and against the claimant, Louise Beeler, disallowing her claim and taxing the costs against her. Thereafter she filed her motion for new trial which was submitted to the court without argument, and judgment was entered by the court generally in favor of the administrators and against Louise Beeler, claimant. It is from the trial court's order overruling the motion for new trial that Louise Beeler appeals.

The specifications of error will be hereinafter dealt with as the points are discussed in appellant's brief. At the outset, appellees contend that appellant is not entitled to a review of the case in this court, for the reason counsel did not appear and orally present the motion for new trial at the time set for its consideration. A motion

was filed which covered the grounds assigned as error. It appears from the record that at the close of the evidence, both parties urgently argued the cause and presented the trial court with authorities sustaining their contentions; that on the date set for the hearing of the motion for a new trial the record discloses that the court's order overruling the motion recites that it had been fully advised in the premises. It is, of course, the duty of counsel to assist the court by clearly stating objections to rulings for which a new trial is asked, but here the errors had been diligently argued to the court, so that it was fully possessed of the points involved.

The fact that counsel did not repeat in an oral argument, on a motion for new trial, grounds which had been previously and fully presented, as disclosed by the record, does not warrant the overlooking of the grounds of alleged error, nor the denial of a review of the assignments of error. (*Beam v. Farmers Union Mutual Hail Ins. Co.,* 127 Kan. 234, 238, 273 Pac. 440.) The better practice, in the instant case, would have been for appellant's counsel to have appeared and advised the court that he had no additional argument or authorities to present other than those which he presented and diligently urged at the close of the evidence. Under the record and orders of the court, we feel that the appellant is entitled to a review.

Appellant's specifications of error may be summed up in one statement that the judgment is contrary to and not supported by the evidence. She urges that the undisputed and uncontradicted testimony submitted to the trial court clearly and convincingly shows that when the contract was entered into, Louise Beeler and her attorney did not know the extent and value of the property owned by her husband, and that the contract was unjust and inequitable, and was not free from fraud, deceit, misrepresentation and overreaching.

This is purely a fact case. The law is well settled that the validity of a postnuptial contract will be upheld where the contract is fairly and understandingly made, is just and equitable in its provisions, and is not obtained by fraud and overreaching. (*Shriver v. Besse,* 163 Kan. 402, 410, 183 P. 2d 407, and cases therein cited; *In re Estate of Schippel,* 169 Kan. 151, 164, 218 P. 2d 192.)

Another general rule applicable to this case is stated in *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483:

"Where it appears that an antenuptial contract was understandingly made and freely executed, and where there is an absence of anything showing fraud or deceit, the mere fact the intended husband did not disclose in detail to the

intended wife the nature, extent and value of his property will not, of itself, invalidate the contract or raise a presumption of fraudulent concealment, and if from a consideration of all the facts concerning the situation of the parties, such as their respective ages, family conditions, property rights, etc., at the time the contract was made the trial court concludes the intended wife was not overreached, the contract should be sustained." (Syl. ¶ 2.)

It is well established that where a party voluntarily signs a postnuptial contract and thereafter seeks to refute it on the ground its execution was obtained by fraud, such fraud must be made to appear clearly before the contract may be declared invalid. (*Shriver v. Besse*, supra; *In re Estate of Schippel*, supra.)

The parties agree to the foregoing principles of law. The rule is thoroughly settled in this state that the determination of issuable facts is no concern of an appellate court provided there is sufficient evidence on which the judgment is based. Moreover, a judgment on the facts made by the trial court will not be disturbed on appeal unless all the competent and credible evidence constrains a different conclusion. (*Tucker v. Hankey*, 173 Kan. 593, 599, 250 P. 2d 784; *In re Estate of Johannes*, 173 Kan. 298, 245 P. 2d 979, and cases therein cited.)

In view of the well-established rules of law, we will summarize the evidence to determine whether it is sufficient to sustain the trial court's judgment.

Louise and John Beeler were married in the year 1934 and lived together on a farm in Jewell county. Marital difficulties arose between them, the cause of which is not disclosed. In November, 1948, Louise consulted Mr. Nolte, a practicing attorney of Lincoln, Nebraska, since the year 1936, and at the time was an assistant attorney general of that state. She advised him of her marital problems and it was proposed that he represent her. On December 8, 1948, Mr. Nolte came to see Mrs. Beeler. He obtained the probate court files in the estate of Fred Beeler, deceased father of John Beeler, and made an examination thereof. He also investigated the records in other county offices pertaining to John Beeler's property. He learned from the files in the estate of Fred Beeler that John Beeler owned a one-fourth interest in the land in Mitchell county, as tenant in common with his brothers. Mr. Nolte did not go to Mitchell county but wrote to the county treasurer and ascertained that the assessed valuation of the Mitchell county land was $76,880. He also ascertained that John Beeler owned a life estate in the land where he and his wife, Louise, resided. The records

disclosed that John owned an undivided one-fourth interest in pasture land in Jewell county, held with his brothers as tenants in common. Also held, in his own right, land known as the Dietz place. Appellant's counsel, Mr. Nolte, made his third trip to the home of appellant on December 30, 1948. At this time he saw John Beeler and had a lengthy discussion with him about a property settlement. John Beeler advised appellant's counsel that he had $40,000 in life insurance tied up to each of his boys, as beneficiaries, and that the policies were in the office of the Northwestern Mutual Life Insurance Company at Wichita, and he could not tamper with them. He also advised Mr. Nolte that he had a $15,000 life insurance policy payable to Louise which he could cash, and this was the only ready money he had. It appears that John advised appellant's counsel of all of the insurance he had. On January 8, 1949, appellant's counsel made another trip from Lincoln, Nebraska, to the home of Mr. Beeler, arriving there about noon, and continued the discussion about the value and extent of his property until 5 o'clock that evening. Virtually everything owned by John Beeler was mentioned in this meeting. John expressed an opinion as to the ready market value of his property, and the value thereof was discussed. The amount of livestock, and the machinery, was discussed. John advised him that the cattle were kept in two feed lots a very short distance from the house. All the farm machinery was kept around the buildings. The grain was in the field and in storage. On February 20, 1949, Mr. Nolte made his fifth trip from Nebraska to Kansas on a prearranged appointment with Louise Beeler, at the Porter Hotel in Beloit. She had made arrangements for John to be present. At this meeting the extent and value of the property was again discussed. John offered to pay $15,000, and after discussing the matter between them, John offered to pay the $15,000 and to give in addition thereto a Buick automobile, and all the household goods they had acquired during their marriage. After this meeting, appellant's counsel returned to Nebraska and prepared a postnuptial contract and transmitted it by mail to John Beeler with the suggestion that he consult a Kansas lawyer as to formal matters. The contract prepared by Mr. Nolte contained the additional provision for giving Louise a $2,250 note. John Beeler signed the contract as prepared by appellant's counsel. This contract was fully performed on the part of John Beeler by paying Louise the sums stipulated therein. Appellant in her brief admits

that John Beeler disclosed to her that he had the life insurance, the Mitchell county land, the Jewell county pasture, shares of stock in the Cawker City bank, sixty shares of Terminal Tower stock, fifteen head of cattle, tractors and implements, Buick automobile, miscellaneous farm equipment, personal property, household goods and furniture. It appears from the record that Louise and John Beeler had lived together as husband and wife on the farm for approximately fifteen years; that she had knowledge of the different farms, pastures, cattle and crops, owned by them jointly and separately. She knew that John had a life estate in certain property left by his father, Fred, and a vested interest along with his brothers in other certain property. At the time of the negotiations for settlement, she was approximately forty-seven years of age and apparently alert. She was represented by able counsel, Mr. Nolte, at all times. Negotiations had been carried on from November, 1948, until March, 1949. At least five separate conferences were held between John, Louise and her attorney. After final negotiations were made, her attorney prepared the postnuptial contract and inserted an extra $2,250, which had not been previously agreed upon. Her attorney advised John to take it to some lawyer to see if it would meet the requirements of the Kansas law. John signed the contract as prepared by appellant's counsel, and lived up to its provisions until his death. No useful purpose would be gained in detailing the mass of evidence presented in the case. Suffice it to say that the entire matter was presented to the trial court, which saw the witnesses, observed their demeanor, heard the whole story, and its judgment holding the contract valid included a finding that, in view of the evidence and circumstances, the contract was freely and understandingly made by the parties, free from fraud and deceit, and that the mutual provisions of the contract did not create or result in unreasonable inadequacy of provisions for the appellant.

It follows that the judgment of the trial court is affirmed.