No. 39,818

In the Matter of the Estate of Charles H. Ward, Deceased. DAISY R. WARD, *Appellant*, v. C. G. DENNIS, Administrator, *Appellee.*

(285 P. 2d 1081)

Opinion filed July 6, 1955.

*J. Donald Lysaught,* of Kansas City, argued the cause, and *John William Wood,* of Liberal, *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks, Leonard O. Thomas,* and *William H. Pringle,* all of Kansas City, were with him on the briefs for appellant.

*Bert J. Vance,* of Garden City, argued the cause, and *C. E. Vance,* and *A. M. Fleming,* both of Garden City, and *Charles H. Fleming,* of Scott City, and *C. G. Dennis,* of Sublette, pro se, were with him on the briefs for appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action involving the validity of an antenuptial contract and to determine the rights of the surviving widow in the assets of the estate of her deceased husband. This appeal involves only the validity of the contract. The essential facts may be summarized as follows: On February 20, 1953, the deceased, Charles H. Ward, and appellant executed an antenuptial contract, at which time both were 72 years of age and each had several living children by prior marriage. The terms of the contract are not in dispute. The pertinent portion reads:

. . . . . . . . . . . . . . . .

"Now, THEREFORE, This indenture witnesseth, that each of the said C. H. Ward and Daisy R. Simonson [Daisy R. Ward] hereby agree, covenant and declare it to be his and her desire that during their marriage each of them shall be and continue completely independent of the other as regards the enjoyment and disbursement of all property owned by them or either of them at the commencement of the marriage, or coming to either of them by gift or inheritance; and each of them hereby agrees and covenants with the other in view and consideration of said marriage that so far as legally possible by their private act and agreement all the property belonging to either of them at the commencement of the marriage or acquired by them by gift or inheritance during their marriage shall be held and enjoyed by him or her and be subject to his or her disposition as his or her separate property in the same manner as if the said proposed marriage had never been celebrated. . . .

"And the parties hereby specifically further agree and covenant to and with each other that upon the death of either, the survivor shall not have and will not assert any claim, interest, estate or title under the laws of any state, because of such survivorship, in or to the property, real, personal, or mixed, of which such deceased party shall die seized or possessed and which was owned by such deceased party at the beginning of the marriage or acquired by him

or her by gift or inheritance during the marriage, and such survivor hereby relinquishes to the heirs, administrators, executors and assigns of such deceased party any and all of his or her claim, distributive share, interest, estate or title that he or she would be entitled to as the surviving husband or wife respectively; and agrees upon demand to make, execute and deliver to the heirs, executors and assigns of such deceased party any and all acquittances, assignments, assurances, deeds, instruments and receipts, that may be necessary and required to effectually carry out and make effective his or her agreements herein contained.

. . . . . . . . . . . . . .

"Party of the first part intends to purchase and pay for out of his present fortune a home for the parties and if party of the second part survives party of the first part she shall have the use of the home and the right to occupy the same during the remainder of her life and at her death it shall go to the heirs or devisees of party of the first part."

The parties were married February 22, 1953. They lived in an apartment until April 7, at which time they moved into a trailer house purchased by deceased and located on lots owned by him. They were looking for a house at the time of Charles' death, May 15, 1953. Proceedings were filed in the probate court of Seward county for appointment of an administrator of the estate of Charles H. Ward, and appellee C. G. Dennis was so appointed. During the course of administration of the estate, appellant Daisy Ward filed her petition in the probate court against the estate alleging the execution of the antenuptial contract, but asserting that the deceased at the time the contract was executed failed to make a fair disclosure of his property and to deal with petitioner with utmost fairness, candor and sincerity, and that the provisions made for the petitioner in the contract were unreasonable, inadequate and disproportionate; that she entered into the contract not understanding and without knowledge that it was unjust and inequitable; that the deceased concealed from her his true worth, and overreached and misled her into signing the contract; that he did not exercise good faith when he asked the petitioner to sign the contract, and he failed to comply with the provisions set forth in the contract during his lifetime; that the deceased died intestate and she, as widow, elected to take her statutory share of one-half of the property, and asked that the antenuptial contract be set aside and she be permitted to take her statutory allowance under the law of intestate succession, and for such other and further relief as might be equitable and just.

The administrator and the heirs at law of the deceased filed

their answer to appellant's claim, asserting the contract had been freely and fairly entered into by deceased in his lifetime; that the terms were reasonable, and the agreement was a valid' and subsisting contract. Subsequent to the marriage, deceased purchased the lots and trailer in question, and the parties were residing in the trailer house at the time of the death of Charles. The answer further alleged appellant was entitled to occupy the trailer house as her home as long as she lived, and denied she was entitled to any portion of the estate of the deceased, and prayed that the contract be adjudged valid and binding, and appellant be declared to have no interest in the property of the deceased.

Appellant replied to the answer by way of a general denial. On the issues thus framed by the parties, the case was certified to the district court for trial. It was stipulated that the antenuptial agreement in controversy was executed by the parties on February 20, 1953; that the parties were married, and Charles H. Ward died a resident of Seward county on the dates stated; that the property occupied by the parties at the time of the death of Charles was worth $4,300, and there was no substantial change in the affairs of the parties between the dates of the contract and the death of Charles. Inventory and appraisement of the real and personal property of the estate of deceased was filed.

At the conclusion of the evidence the court found the parties had entered into the antenuptial contract, and at the time of the death of decedent, the parties occupied as their residence the trailer house located on certain lots purchased by the deceased. Subsequent to the marriage and prior to the death of decedent the parties had interviewed real estate agents and talked about purchasing a residence, but no contract of purchase had been entered into; that the antenuptial contract was freely and fairly entered into between the parties in good faith and after a free and open disclosure between them, and prior to entering into the contract appellant took a copy to her attorney and consulted with him. The court further found at the time of entering into the contract appellant knew that decedent owned real estate in Wallace and Haskell counties, was receiving royalties from producing gas wells, had money in two different banks, and was a man of substantial wealth; that appellant had been acquainted with decedent and his former wife for approximately five years, and had informed various persons she was marrying a man of substantial means and would not have to work again;

that decedent had ·not furnished an itemized list of his property and appellant made no request for such information, and made no independent investigation as to the extent of decedent's property. The court concluded as a matter of law the contract was freely and fairly entered into between the parties in good faith, without fraud or overreaching upon the part of either, and that the antenuptial contract was a valid and binding contract upon the parties. From the judgment thus entered, the widow appeals, and asserts the contract was so disproportionate and unreasonable as to render it unenforceable; that decedent failed to treat appellant with fairness, candor and sincerity, and that the contract was without considera-tion by reason of nonperformance on the part of decedent during his lifetime.

Appellant set forth the general rule that there must be a fair disclosure of the nature and amount of the assets to which the intended bride contracts to renounce her statutory rights, and a failure to deal openly and fairly will render the contract unenforceable. We have no quarrel with this rule. However, where it appears an antenuptial contract was understandably made and freely executed, and where there is an absence of anything showing fraud or deceit, the mere fact the intended husband did not disclose in detail to the intended wife the nature, extent and value of his property will not, of itself, invalidate the contract or raise a presumption of fraudulent concealment, and if from a consideration of all the facts concerning the situation of the parties, such as their respective ages, family conditions, property rights, etc., at the time the contract was made and the trial court concludes the intended wife was not overreached, the contract should be sustained. (*In re Estate of Cantrell*, 154 Kan. 546, 551, 119 P. 2d 483; *In·re Estate of Neis*, 170 Kan. 254, 260, 225 P. 2d 110, and the cases therein cited and reviewed.) It is a well-established rule that where a party voluntarily signs an antenuptial contract and thereafter seeks to refute it on the ground its execution was obtained by fraud, such fraud must be made to appear clearly before the contract may be declared invalid. It is also well settled in this state that the determination of issuable facts is no concern of an appellate court provided there is sufficient evidence on which the judgment is based. Moreover, a judgment on the facts made by the trial court will not be disturbed on appeal unless all the competent and credible evidence constrains a different conclusion. (*In re Estate of Beeler*, 175 Kan. 190, 193, 194, 262 P. 2d 939, and cases therein cited.)

In view of the well-established rules of law, we will summarize the evidence to determine whether it is sufficient to sustain the trial court's judgment. A review of the evidence supports the finding of the trial court that appellant had knowledge the decedent was a man of considerable wealth. She testified she knew prior to the time of executing the contract that Mr. Ward had royalties coming in on oil and gas wells, had money in two banks and land in Haskell and Wallace counties; that she learned he had some land near Satanta (Haskell county) and he spoke of it as "home," but she did not know the extent of the holding. She heard decedent had land in Wallace county and knew about the home place in Haskell county. She further testified in relation to the contract as follows:

"Q. Mrs. Ward, I believe you testified you had in your possession a copy of this ante-nuptial contract for approximately three weeks before you were married? A. That, or it could have been a little longer. Q. And you did read it and study it? A. I did. Q. And you talked to a lawyer and had him read it? A. I did. Q. You were given independent advice on it by a lawyer? A. Yes, sir. Q. That you should change certain provisions that should be put in it? A. One. Q. And that provision was put in it? A. Yes, sir."

Twila Taylor testified she had a conversation with appellant prior to the execution of the contract wherein she told her how many quarters of land decedent owned in Wallace county. Mr. Maxwell testified he lived at appellant's rooming house prior to her marriage to decedent, and she spoke of him as a man of some wealth; that he was going to build a nice home in Liberal, and talked about his farms, and he had money in two banks. There is no evidence that deceased made any false representations to appellant concerning his holdings, or otherwise misled her.

No useful purpose may be gained by narrating all the evidence presented in this case. Suffice it to say that a number of witnesses testified as to conversations with appellant prior to the execution of the contract that she knew decedent was a man of some means, and he owned land in two counties, had money in two banks, was receiving checks for oil and gas royalties, and that she would not have to work any more. We have read the record carefully and have reached the conclusion that the findings of the trial court are amply sustained by the evidence.

Appellant next contends the contract is unenforceable for failure of consideration. The crux of this contention is that decedent intended to purchase a home in which appellant was to have the right to live for the rest of her life in the event decedent predeceased

her. Although the decedent had looked at real estate and had made oral promises to appellant that he would purchase a house, he took suddenly ill and died 83 days after the marriage and before a house could be purchased. It is contended on behalf of appellant that decedent's failure to purchase a home during his lifetime rendered the contract void for want of consideration. We cannot agree with appellant's contention. As to consideration for the agreement, it may be said the fact it was in writing imported consideration (G. S. 1949, 16-107). Moreover, since the agreement was in contemplation of marriage, and the marriage was consummated within a few days, the marriage itself completed any lack of consideration in the agreement. See *In re Estate of Greenleaf*, 169 Kan. 22, 28, 217 P. 2d 275; 41 C. J. S. 560; 26 Am. Jur. 884; also, 26 Am. Jur. 891, where it is stated:

"The general rule is that where parties enter into an antenuptial agreement, each must perform the terms and conditions of that agreement before he or she can claim the benefits to be derived therefrom. However, the rule that equity will not compel a rescission where there has been partial performance has been applied to a marriage settlement where the marriage has occurred, but the claim is made that other considerations, such as to be a kind and dutiful spouse, to use property for the joint benefit of the spouses, and to take care of the other spouse in old age, have not been complied with. It has been ruled that since marriage is a consideration that cannot be restored, covenants in a marriage settlement or agreement are independent, and failure of their performance by one party does not defeat his or her right to performance by the other party, if the former is willing and can perform or the latter has a right to damages for the breach, . . ."

(See, also, Separation Agreements and Ante-nuptial Contracts, Annotated [Rev. Ed.], Lindey, p. 794.)

Appellant contends decedent did not fulfill his promise to buy her a home during his lifetime. Assuming this promise had not been fulfilled, such failure, standing alone under the facts in the instant case, is insufficient to invalidate the contract or render it unenforceable.

Appellant's contention that the court erred in refusing to admit certain evidence, has been examined and found without substantial merit.

In view of what has been said, we hold the trial court did not err in concluding as a matter of law that the antenuptial contract was freely and fairly entered into by the parties in good faith, without fraud or overreaching on the part of either, and that the contract

was valid and binding. The judgment upholding the validity of the contract is affirmed, and the case is remanded to the lower court for further proceedings to determine the rights of appellant to the assets of the estate of Charles H. Ward, deceased, under the provisions of the antenuptial contract.

It is so ordered.