No. 45,426

GERALDINE HERMAN, Individually and As Administrator of the Estate of Lloyd G. Herman, Deceased, *Appellant*, v. HELEN GOETZ, *Appellee*.

(460 P. 2d 554)

Opinion
filed November 8, 1969.

*Lelyn J. Braun,* of Garden City, argued the cause, and *Dale H. Corley,* of Garden City, was with him on the brief for the appellant.

*F. F. Wasinger,* of Hays, argued the cause, and *Don C. Staab,* of Hays, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action to set aside a gift of a $25,000 savings account. Essentially the contest is between the donor's widow and his sister.

Trial to the court resulted in a judgment for the donee defendant, from which plaintiff has appealed.

Plaintiff Geraldine Herman initiated the action as administratrix of the estate of her late husband, Lloyd G. Herman, and later had herself joined as a plaintiff as his widow. She has continued the action in both capacities.

We highlight pertinent events. In 1961 Lloyd G. Herman was accidentally injured by electricity and as a result both his legs were amputated. For this injury he received a settlement award, out of which he placed $25,000 on deposit in a savings account in a Garden City, Kansas, bank. This amount remained there until he withdrew it in January, 1967, and is the source of the account in dispute here. For some time in 1962 and 1963 Lloyd lived at Nevada, Missouri, with Geraldine as his housekeeper. Both had previously been married and divorced. Geraldine had three children. On June 17, 1964, Lloyd and Geraldine entered into an antenuptial agreement and on August 29, 1964, were married. She had no property other than her clothes and her only job experience had been that of a waitress. Her formal education ended with one year of high school. Prior to the marriage Lloyd purchased a home in Garden City for $8,000, paying $2,000 down and agreeing to pay the balance in monthly payments of $52.27. Later, in 1966, Lloyd and Geraldine bought a rental house nextdoor for $600.00, taking title as joint tenants. Lloyd, Geraldine and her three children lived in the Garden City home. They had social security and Veterans Administration payments aggregating $389.00 per month. Lloyd worked some on a part time basis and Geraldine worked about two years at Woolworths. They maintained a joint checking account in

the Garden City bank out of which family expenses were paid. Lloyd continued to maintain the separate savings account in his own name.

Marital trouble arose in late December, 1966, after Lloyd had a heart attack. Geraldine left the home January 11, 1967. On January 15, 1967, she withdrew all the money in the joint checking account. On January 16 Lloyd withdrew his entire savings account. On January 17 he went to Victoria, Kansas, his boyhood home, and there deposited in the Farmers National Bank $25,000 of that money in a savings account in his own name. The account was marked payable on death to Wilfred Herman (Lloyd's brother) and Helen Goetz (Lloyd's sister, defendant-appellee herein). Lloyd also put $1,300 in a checking account at the Victoria bank. On January 20 Geraldine commenced divorce proceedings in Finney county, Kansas, and had Lloyd personally served with summons that day. On January 21 Lloyd returned to the Victoria bank with his mother and his sister Helen and had the savings account put in Helen's name. This account is the target here. On January 24 Lloyd filed his answer and cross-petition in the divorce proceeding, alleging among other things the existence of the antenuptical agreement. On February 8, 1967, Lloyd died as a result of a heart attack. The evidence will be related in more detail when pertinent to the questions involved.

In ruling against appellant the trial court made findings of fact and conclusions of law. In effect it upheld the validity of the antenuptial contract, ruled the transfer of the savings account to appellee was a valid gift *inter vivos,* that appellant's rights to a property division as a spouse terminated upon Lloyd's death and the *lis pendens* statute (K. S. A. 60-2201 [a]) did not operate to bar the gift.

The court found the antenuptial contract was a valid and binding contract freely and voluntarily entered into prior to the marriage and in consideration of the marriage, that appellant had full knowledge of Lloyd's property, the agreement was fairly and understandably made, was just and equitable in its provisions, and was free from fraud and deceit.

In essence the agreement provided that during the marriage each party was to continue to have the exclusive use and control of his own property, each was to have the right to sell, convey or transfer

his own property as though he or she was unmarried; each released, disclaimed and waived any interest in the property of the other by reason of the marriage, and each agreed such property should pass to heirs at law, devisees or legatees of each as though no marriage were ever consummated. Nothing in it could be construed as encouraging a separation.

Appellant contends the court erred in its findings and conclusions that the agreement was fairly, justly and equitably made and was free from fraud and deceit. Her argument here is that the contract must be inequitable if by reason of it Lloyd could transfer away from his wife a large part of his property. This position does not really come to grips with the question. Appellant recognizes the general rule in this state that persons competent to contract may execute an antenuptial agreement and determine for themselves what rights they will have in each other's property during their marriage and after its termination by death, and such a contract will be upheld where it is fairly and understandably made, is just and equitable and is not obtained by fraud or overreaching (*Dunsworth v. Dunsworth,* 148 Kan. 347, 81 P. 2d 9; *In re Estate of Schippel,* 169 Kan. 151, 218 P. 2d 192).

The consideration for an antenuptial contract may be any valuable consideration, reciprocal stipulations or the marriage alone (*Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537; *In re Estate of Ward,* 178 Kan. 366, 285 P. 2d 1081).

In *Gordon v. Munn,* 87 Kan. 624, 125 Pac. 1, this court held:

"If the intended wife is competent to make a contract and has a fair and adequate knowledge concerning the future husband's property when she enters into an antenuptial agreement, which is free from deceit or fraud, it should not be set aside merely because the court or jury find that the provision made for her is in great disproportion to his property." (Syl. ¶ 5.)

In *Watson v. Watson,* 104 Kan. 578, 180 Pac. 242, this court referred to and amplified the foregoing by holding:

"An antenuptial contract must be upheld unless some fraud, deceit or unreasonable inadequacy or disproportion appears. If the latter appear, the presumption of fraud is raised, and the burden is on the husband or those claiming under him to show that the wife was fully informed as to his property." (Syl. ¶ 5.)

Then in *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483, this court stated:

"Unreasonable inadequacy of a provision for the intended wife, or disproportion of the share she will receive, cannot be concluded from the con-

tract alone. What is inadequate or disproportionate can only be determined from a consideration of all the circumstances. Not only is the amount of the husband's property a factor—consideration should be given to the situation of the parties, their respective ages, as compared to each other, their respective property, their family ties and connections, and the whole circumstances leading up to the execution of the contract and their marriage, the question in the end being whether, in view of all the facts, the intended wife was overreached." (pp. 552-553.)

The evidence favorable to appellee reveals Lloyd and Geraldine were well acquainted with each other for some time prior to their marriage. Geraldine was fully aware of his financial affairs prior to the marriage, she knew the net amount of his settlement, and both before and after the marriage she assisted him in handling financial transactions. Prior to the marriage the two went to the office of a Garden City attorney who at Lloyd's request had drawn the antenuptial agreement. Geraldine had a copy of the agreement prior to the time she signed it. The attorney explained each paragraph. He told Geraldine she could ask any question about the agreement and also that she should seek independent legal advice. Lloyd made full disclosure of his property to Geraldine in the lawyer's presence. Geraldine's own trial testimony indicated she was not unaware of what she was doing in signing the antenuptial contract.

Geraldine's age was thirty-one at the time of trial in January, 1968. Lloyd's age was not revealed in the record but his physical condition was. There was no concealment or misrepresentation as to property. We need not labor the point. The basic issue is whether the intended wife was overreached (*In re Estate of Cantrell,* supra). The trial court found she was not and we must say that finding is substantially supported by the evidence. The contract must be treated as a valid and enforceable one, binding on Geraldine insofar as property rights are concerned.

Appellant also challenges the trial court's finding and conclusion that a valid *inter vivos* gift of the $25,000 savings account was made by Lloyd on January 21, 1967, in effect arguing insufficiency of evidence to show Lloyd intended to relinquish control of the account. Shortly prior to January 21 Lloyd had several times expressed his desire to get rid of the savings account because of the grief it was causing him. He had tried to give it to a brother and also to another sister. His expressed desire was to be permanently rid of it although he indicated he did not want Geraldine to have

any of it. There was testimony Geraldine had said she deserved the money and was going to get it, that she was going to show him it was as much hers as it was his. Lloyd went to the home of his sister, appellee, in Russell, Kansas, and told her he was going to give her his money. Appellee said she would accept it. No conditions were attached to the gift. Lloyd said he was receiving plenty of money from the government upon which he could live. Appellee indicated to Lloyd he could make his home with her. Lloyd also discussed with her arrangements for him to operate a beer joint in Russell. Lloyd, his mother, and appellee went to the Victoria bank. We will only summarize the evidence as to the transaction there. At Lloyd's direction, the banker prepared the necessary papers evidencing transfer of the savings account to appellee. Lloyd delivered a deposit slip and passbook in appellee's name to appellee, stating it was hers and she was now the owner. The banker had previously explained the effect of the transaction, that Lloyd had lost complete control of the account and it could only be withdrawn by appellee. Afterward Lloyd several times expressed his relief and satisfaction that the transfer had been made.

In *Hudson, Administrator v. Tucker*, 188 Kan. 202, 361 P. 2d 878, this court set forth the requisites of a gift *inter vivos* as follows:

"To establish a gift *inter vivos* there must be (*a*) an intention to make a gift; (*b*) a delivery by the donor to the donee; and (*c*) an acceptance by the donee. The gift must be absolute and irrevocable. (Syl. ¶ 3.)

There it was also pointed out the elements of intent, delivery and acceptance are usually questions of fact to be determined by the trier of the fact. That is the case here and we cannot, as urged, reweigh the credibility of the witnesses who testified upon the subject and declare Lloyd never really intended to make a gift. Upon our limited review we can hold only that the trial court's finding Lloyd effected a valid *inter vivos* gift of the account is supported by substantial evidence.

Appellant contends the doctrine of *lis pendens* (K. S. A. 60-2201 [*a*]) should come to her rescue inasmuch as the transfer of the savings account was made after she had commenced her divorce proceeding. She cites and relies on *Craig v. Craig*, 110 Kan. 13, 202 Pac. 594, and *Graham v. Pepple*, 129 Kan. 735, 284 Pac. 394. Neither case is helpful to her. In *Craig* this court stated:

"The death of a party to an action for a divorce, pending its appeal, abates the action or appeal so far as it affects the marital status, but it does not neces-

sarily abate the action or appeal so far as *property* rights are concerned." (Syl. ¶ 5.) (Our emphasis.)

The above case is inapplicable for two reasons. In it there was great fraud in the transfer of property from one spouse to the other. Here no fraud was involved. Secondly, the case dealt with property rights between the parties. Here the property rights had already been determined by the antenuptial contract.

In *Graham,* as well as in other cases cited by appellant, there was no antenuptial contract and the *lis pendens* doctrine was applied to specific realty described and claimed in a divorce petition.

In *Travis v. Supply Co.,* 42 Kan. 625, 628, 22 Pac. 991, this court stated the three elements of a valid and effective *lis pendens* are: (1) The property must be of a character to be subject to the rule of *lis pendens;* (2) the court must acquire jurisdiction both of the person and the property; and (3) the property must be sufficiently described in the pleadings. The litigation must be about some specific thing or property which will be affected by the termination of the suit (54 C. J. S., Lis Pendens, § 4, p. 574).

Here it must be borne in mind we are dealing with specific property—the $25,000 savings account—nothing more. The record reveals appellant has received the two Garden City homes, one of which she sold and the other she has rented. We are not concerned with them. Nor are we concerned with unadjudicated conjugal rights springing from the marriage relation which may not have been affected by the antenuptial contract (see 2 Lindey, Separation Agreements and Ante-nuptial Contracts, rev. ed., § 90, ¶¶ 13A & 13B) but which were terminated upon Lloyd's death. We are concerned with *property* rights which were determined by the antenuptial contract. Lloyd validly conveyed the property prior to his death and it was not subject to the rule of *lis pendens.*

The judgment appealed from is affirmed.

APPROVED BY THE COURT.