No. 48,560

Norma Matlock, *Appellant,* v. Paul Matlock, *Appellee.*

(576 P.2d 629)

Opinion filed April 1, 1978.

*Charles F. Forsyth,* of Erie, argued the cause, and was on the brief for the appellant.

*John W. White,* of Humboldt, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is an appeal by the wife in a divorce case from the judgment of the district court upholding and enforcing an antenuptial agreement and from a postjudgment order for child support.

The parties were married on November 7, 1975. At that time the defendant-husband, Paul Matlock, was fifty-five years of age and had been married four times previously. He was the owner of a 600-acre farm, machinery, cattle, furniture, and household goods. His net worth was approximately $300,000. He had four adult children by a former marriage. The plaintiff-wife, Norma Matlock, was from Missouri. She was approximately thirty-five years of age and had been married once before. She had two children by the former marriage. At the time of the marriage Norma was a waitress and had worked in that capacity for some period of time. She owned a car and some household goods and was anticipating a settlement from the previous marriage. The nature and amount of this settlement was never brought out in the evidence.

Prior to the marriage of the parties, Paul and Norma entered into an antenuptial agreement dated November 6, 1975, which was prepared by Paul's attorney, John W. White, of Humboldt, Kansas. Although there was some conflict in the testimony, the trial court found that the agreement was executed on November 6,

1975, following a prior meeting two or three days before when the matter was first discussed with White. The antenuptial agreement provided as follows:

## "ANTENUPTIAL AGREEMENT

"THIS AGREEMENT, made this 6th day of November, 1975, between Norma L. Streitmatter of 520 N. Jefferson, Iola, Kansas, party of the first part, Paul Matlock, of R. R. No. 2, Thayer, Kansas, party of the second part, witnesseth:

"THAT WHEREAS, said parties have mutually agreed to become husband and wife and a marriage is about to be solemnized between said parties; and whereas, the said Paul Matlock is the owner of certain real estate, notes, mortgages, livestock, farm equipment and other personal property; and whereas, the said Norma L. Streitmatter is the owner of certain other personal property; and whereas, it is mutually desired and agreed by the said parties that the property and estate of each of the said parties as now composed and constituted shall remain separate, and be subject to the sole control and use of its owner as well after the solemnization of said marriage as previous thereto, except as hereinafter stated.

"NOW, THEREFORE, it is mutually covenanted and agreed between said parties:

"1. That the estate of the said Norma L. Streitmatter shall remain and be her separate property, subject entirely to her individual control and use the same as if she were unmarried; and that the said Paul Matlock shall not acquire by reason of said contemplated marriage, for himself, his heirs, assigns or creditors, any interest in her said property or estate or right to control thereof, nor any interest in the gross income, increase, rents, profits or dividends arising therefrom, excepting as hereinafter provided; that it is further agreed by the said Paul Matlock that any property that the said Norma L. Streitmatter may hereafter acquire or become entitled to by will or descent, shall be owned and held by her as though she acquired it before the solemnization of said marriage; and the said Paul Matlock hereby agrees that in consideration of said contemplated marriage and the covenants of the said Norma L. Streitmatter herein set forth that he will and does waive, release and relinquish unto the said Norma L. Streitmatter all right to the use and control of her separate property and estate and the gross income therefrom, except as hereinbefore provided; and further agrees that the said Norma L. Streitmatter shall have the right at all times to dispose of any part or all of her separate property and estate by deed, will or otherwise, upon her sole signature, hereby ratifying and consenting on his part to any and all such disposition of her said property or estate; or in case any purchaser desires that he join in the execution of any instrument conveying any part of her said separate estate, he will jointly execute the same with her.

"2. That the estate of the said Paul Matlock shall remain his separate property, subject entirely to his individual control and use the same as if he were unmarried; and the said Norma L. Streitmatter shall not acquire by reason of said contemplated marriage, for herself, her heirs, assigns or creditors, any interest in his said property or estate; or right to the control thereof or any interest in the gross income, increase, rents, profits or dividends arising therefrom, excepting as hereinafter provided; and it is further agreed by the said Norma L. Streitmatter

that any property the said Paul Matlock may hereafter acquire by will or descent, shall be owned and held by him as though he had acquired it before the solemnization of said marriage; and the said Norma L. Streitmatter hereby agrees in consideration of said contemplated marriage and the covenants of the said Paul Matlock herein set forth, that she will and does waive, release and relinquish unto the said Paul Matlock all right to the use and control of his separate property and estate and the gross income therefrom; and further agrees that the said Paul Matlock shall have the right at any time to dispose of any part or all of his separate property or estate by deed, will or otherwise, upon his sole signature, hereby ratifying and consenting on her part to any and all such disposition of his said separate property or estate, or join in proper conveyances upon request. Said waiver includes the right of inheritance.

"3. As to the income of the said parties from their personal earnings or growing out of their separate estates, any residue of the income derived from the use of either of said estates or personal earnings of either or both, shall be considered as joint earnings and shall become their property as joint tenants with right of survivorship and the survivor shall become the sole owner thereof in case of the death of either; and any property acquired by either or both out of the income of either or both during said marriage relation shall become likewise joint property with the right of survivorship. Provided, however, that any increment to the separate estate of either by operation of law shall not be considered as income or joint earnings; and Provided further that nothing in this agreement shall relieve Paul Matlock from his obligation to support said Norma L. Streitmatter as his wife, as provided by the laws of the State of Kansas.

"4. That each party, in the event of a separation, and/or divorce, shall have no right as against the other by way of claims for support, alimony, attorney fees, costs, or division of property, except as to the jointly held property as anticipated by paragraph 3 hereof.

"5. This contract is to be binding on the heirs, assigns and legal representatives of both the parties hereto.

"IN WITNESS WHEREOF, the parties hereto have subscribed their names to this agreement in duplicate on the day and date first above written."

The marriage was of a short duration as difficulties arose between the parties almost from the beginning. The difficulties resulted in a separation of the parties on December 6, 1975, and the filing of a divorce action by Norma Matlock on December 8, 1975. The trial court found the parties to be incompatible and granted a divorce to the parties on that ground. The judgment granting a divorce is not involved on this appeal. Following the filing of the divorce case, Norma Matlock discovered that she was pregnant. The district court made an order for the support of the wife *pendente lite.*

At the trial of the case the primary issue was the validity of the antenuptial agreement. The trial court upheld the agreement and denied Norma alimony or a share of her husband's property. In

accordance with the agreement, the court awarded each of the parties his or her separate property. The wife challenged the validity of the antenuptial agreement, contending that the agreement was not fair or understandably made and was the result of fraud and overreaching on the part of her husband. She further contended that the agreement was void as contrary to public policy in that it tended to promote separation and divorce. Following the hearing, the trial court took the matter under advisement and ultimately found that the antenuptial agreement dated November 6, 1975, should be upheld and that the parties were bound by the agreement. The court ordered the attorney fees and costs to be paid by the husband, holding that the provision in paragraph four of the agreement pertaining to attorney fees and costs was invalid.

On the appeal Norma Matlock raises the same basic issues which she raised in the trial court. She contends that the trial court erred in finding that the antenuptial agreement was fairly and understandably made and was not the result of fraud or overreaching when the evidence showed that she did not fully understand or have full knowledge of what she was signing and did not have the independent advice of counsel. The issues presented are essentially fact issues which the trial court resolved against the wife. Under established rules of law this court is required to uphold the trial court findings if they are supported by substantial competent evidence. (*Ranney v. Ranney,* 219 Kan. 428, 548 P.2d 734 [1976].) It would serve no useful purpose to outline in detail the testimony of the parties presented at the trial. Suffice it to say, there was evidence from which the trial court could find that, although the agreement was prepared by the husband's attorney, the wife had ample opportunity to obtain independent legal advice for herself had she chosen to do so since there were at least two separate conferences on the matter over a period of several days. There is evidence to show that at the first meeting the parties discussed the antenuptial agreement and the form that the same should follow. At the second meeting the agreement in completed form was executed and signed by the parties. Norma Matlock herself testified that the agreement was what she wanted and she knew exactly what she was getting when she signed it, that she understood what the agreement was, and that she did not want any property that the defendant had.

There is also evidence that prior to the time the agreement was signed Norma Matlock was fully advised of the defendant's financial situation, the nature of his property, and that his net worth was in the neighborhood of $300,000. We have carefully reviewed the record and find substantial competent evidence to support the findings of the trial court that the antenuptial agreement was fairly and understandably made and was not the result of fraud or overreaching.

The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers and to uphold such contracts where they are fairly and understandably made, are just and equitable in their provisions, and are not obtained by fraud or overreaching. Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties. (*Ranney v. Ranney,* supra; *In re Estate of Murdock,* 213 Kan. 837, 519 P.2d 108 [1974].)

In the trial court, and again on this appeal, the wife maintains that the agreement was grossly unfair and tended to promote separation or divorce, contrary to the public policy of this state. In determining whether an antenuptial contract should be sustained, unreasonable inadequacy of a provision for the intended wife, or disproportion of the share she will receive, cannot be concluded from the contract alone. Consideration must be given to the circumstances in the case. As pointed out in *Herman v. Goetz,* 204 Kan. 91, 460 P.2d 554 (1969):

". . . Not only is the amount of the husband's property a factor—consideration should be given to the situation of the parties, as compared to each other, their respective property, their family ties and connections, and the whole circumstances leading up to the execution of the contract and their marriage, the question in the end being whether, in view of all the facts, the intended wife was overreached." (Syl. ¶ 3.)

In the present case the evidence shows clearly that at the time of the marriage the parties should have known exactly their respective situations and what they were getting into. The difference of ages in the parties was approximately twenty years. Each of the parties had been married before and had children by a previous marriage. The husband had been married four times previously. Each of the parties was concerned about his or her

children by previous marriages and was interested in seeing that their rights of inheritance were fully protected.

The antenuptial agreement in this case, although setting aside to each of the parties his or her separate property, provides that any residue of the income derived from the use of either of their separate estates or personal earnings should be considered as joint earnings and should become the joint property of the parties. Furthermore, the third paragraph of the antenuptial agreement specifically provided that nothing in the agreement shall release the husband from his obligation to support his wife as provided by the laws of the state of Kansas.

The marriage presented a challenge to the parties. If the marriage was of short duration, each of the parties would walk out of it with the property he or she had when the marriage was consummated. If the marriage was a success and the couple prospered from their joint efforts, then their joint accumulations could grow and be shared equally. Furthermore, if their affection for each other blossomed, there was nothing to prevent them from revoking their antenuptial agreement by mutual consent. An antenuptial agreement made by parties contemplating marriage may be revoked and canceled by their mutual consent after the marriage, and when that is done, the agreement is no longer effective. (*Campbell v. McBurney,* 201 Kan. 26, 439 P.2d 133 [1968].)

The factual circumstances in this case are similar to those in *Dunsworth v. Dunsworth,* 148 Kan. 347, 81 P.2d 9 (1938), and *Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537 (1885). We have concluded that the trial court did not err in upholding the antenuptial contract of the parties and in denying alimony or a share of the husband's separate property to the wife.

The second issue to be determined on the appeal concerns the amount of child support awarded to the plaintiff following the birth of the child. The judgment of divorce became effective when the journal entry was filed on June 2, 1976. As a part of that decree, the court ordered the defendant to pay plaintiff's medical expenses, including any necessary hospital costs required by her pregnancy including confinement and delivery of the child. The trial court also recognized that further proceedings would be required, if necessary, to provide for the child's care and support. The child was born on June 22, 1976. Some time thereafter

plaintiff filed a motion for child support. A hearing was not had on this motion until November 3, 1976, following which an order for support was entered on November 19, 1976. The district court found that the defendant should pay child support in the amount of $150 per month beginning with the month of November 1976. The trial court did not order the defendant to pay child support during the period from the date of birth, June 22, through October of 1976. It was the court's position that it did not have the power to make such an order retroactive. On the appeal the wife complains both as to the amount awarded for child support and also because the district court failed to require defendant to pay any amount for the support of the child for the first five months of his life. We have considered the record and have concluded that the trial court did not abuse its discretion in allowing $150 per month for the support of the infant child. The question of child support is always open and if there is a change of circumstances as the child gets older, the amount of child support can always be adjusted.

As to the failure of the trial court to provide child support during the first five months of the child's life, in our judgment the wife has cause to complain. At the time the divorce was granted, the court specifically reserved the question of child support until after the birth of the child. We find nothing in our prior decisions which prohibits the district court from awarding a lump sum to a wife to reimburse her for past expenses incurred in the support of a child. In fact, we have held that such an award for past child support is appropriate in a proper case. (*Effland v. Effland,* 171 Kan. 657, 237 P.2d 380 [1951].) Here the trial court had the power to order the defendant to pay a lump sum to plaintiff to reimburse her for her past expenses and in our judgment he should have done so. An award of $750.00 to cover child support for the five month period is appropriate.

For the reasons set forth above the judgment of the district court is affirmed except that the order for child support is modified and the defendant is ordered to pay plaintiff the total sum of $750.00 as additional child support.