No. 41,635

THOMAS MAYO CROSBY, *Appellee*, v. MARJORIE ROSEN CROSBY, *Appellant*.

(350 P. 2d 796)

Opinion filed April 9, 1960.

*Lester M. Goodell* and *Harold Doherty*, both of Topeka, argued the cause, and *Margaret McGurnaghan; Marlin S. Casey; Raymond Briman; Thomas R. Sewell; Gerald L. Goodell;* and *James Benfer*, all of Topeka, were with them on the briefs for the appellant.

*Robert E. Russell*, of Topeka, argued the cause, and *Clayton E. Kline; M. F. Cosgrove; Willard N. Van Slyck, Jr.; William B. McElhenny, O. R. Stites, Jr.;* and *James L. Grimes, Jr.*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This case was commenced on September 15, 1958, by Thomas M. Crosby against his wife, Marjorie Rosen Crosby, by the filing of a petition in the district court of Shawnee County wherein he prayed for a divorce on grounds of habitual drunkenness and gross neglect of duty. The wife answered denying the charges and in a cross-petition asked for a divorce against her husband on grounds of extreme cruelty and gross neglect of duty. Thereafter both plaintiff and defendant furnished the trial court with Bills of Particulars containing detailed charges of alleged misconduct.

Issues having been joined on claims of the parties the cause came on for trial by the court which first tried the issues as to plaintiff's right to divorce under his petition and defendant's right to divorce under her cross-petition and subsequently, in a separate trial, disposed of issues relating to property division, alimony, attorneys' fees and suit money.

After hearing evidence on the divorce issue the trial court on April 14, 1959, found that the defendant had been guilty of gross neglect of duty and for that reason plaintiff should be granted a divorce and that the relief sought in the defendant's cross-petition should be denied. Thereupon judgment was rendered accordingly, effective as of the date last mentioned. Two days later defendant gave notice of her intention to appeal from the divorce decree.

Subsequently, the remaining issues in the case came on for trial and after the introduction of evidence relating to those issues the court, on May 26, 1959, rendered a judgment with respect thereto which, for present purposes, may be said to have been favorable to the plaintiff and wholly unsatisfactory to the defendant.

Thereafter, and upon the overruling of proper motions for a new trial on the issues as tried, defendant perfected an appeal from (1) the judgment rendered on April 14, granting plaintiff a divorce and denying her a divorce; (2) the judgment of May 26, making provision for permanent alimony, division of property, final allowance of attorneys' fees; and (3) the orders overruling her motions for a new trial.

Stripped of matters incidentally material but not decisive of its decision we are convinced from oral arguments of the cause and an extended examination of an exceedingly lengthy record that the vital and all important question involved in this case is whether, in view of the uncontradicted evidence of record relating to the appellant's mental status on all dates in question, our decisions preclude the upholding of the judgment granting the appellee a divorce from appellant on the ground of gross neglect of duty. Hence our brief and summarized statement respecting pleadings and proceedings had in the court below, devoid of reference to all matters we regard as nonessential to its determination.

Having reached a conclusion as to the all decisive question involved it is neither necessary nor required that we burden our reports or embarrass the parties with a detailed recital of all the evidence adduced supporting the claims and counterclaims made during the trial of this unfortunate marital tragedy. Therefore our factual statement will be highly summarized and limited strictly to a chronological review of the general factual picture, followed by a more detailed recital of the evidence we deem pertinent to the ultimate disposition of the all decisive question to which we have heretofore referred.

Appellee and appellant were married on June 1, 1928. He was twenty-two years of age and she was nineteen. She had no assets or property of her own but he had a one-fourth interest in some business properties in Topeka which he had inherited from his father. For the first two years following their marriage they lived in a rented house at Fifth and Topeka Blvd. Then they built a new house and for the next twenty-seven years lived in a spacious sixteen room home located at 1545 Stratford Road in Topeka. Indeed it may be stated that during their entire marriage they were financially independent and in their every day walk of life conducted themselves accordingly.

The parties concede that for the first twenty years of their marriage they had a very happy, if not ideal, marital relationship. Two lovely daughters were born of the marriage. Each was reared in the home and grew to womanhood in Topeka. Both are happily married and have children of their own. At the time of the trial one daughter was thirty years of age and the other was twenty-eight.

In 1948 appellant and appellee commenced to have marital difficulties. Obviously, some of their differences were attributed to a disturbed mental condition on the part of appellant. In any event it appears from the record, and is not denied by either party, that between 1948 and 1955 appellant was treated at Robinson's Neurological Hospital, Kansas City, Missouri, for a considerable period of time for mental illness, where she was given thirteen shock treatments and her illness classified as hyper manic-depressive psychosis; and that during portions of the same period she received treatments at the Menninger Foundation, Topeka, Kansas, for her mental condition.

Sometime in 1955 appellant filed an action for a divorce against appellee in the district court of Shawnee County. Following joinder of issues in that action and the furnishing by appellee to the court of a Bill of Particulars, *to which we shall presently refer*, the parties became reconciled. Thereafter, but not until execution of a postnuptial agreement containing certain reciprocal provisions, which we pause here to note must be classified as more advantageous to appellee than appellant, appellant dismissed the divorce action and they again resumed their marital relationship in the home on Stratford Road. Notwithstanding they continued to have marital differences but lived in the Stratford Road home until Feb-

ruary, 1957, when it was sold. Shortly thereafter they moved into a rented house at 1528 Oakley and lived there until Saturday, September 13, 1958, when appellee left the home and two days later commenced the instant action.

Turning now to evidence pertinent to the disposition of the decisive question, some of which is to be found in the second preceding paragraph of this opinion and for that reason will not be restated, it is to be noted:

1. That in his 1955 Bill of Particulars, which it should be pointed out is attached to and must be considered as a part of his Bill of Particulars in the instant case, appellee makes the following statement:

". . .; that the defendant has tried his level best to help plaintiff in every way for the reason that this defendant honestly believes the plaintiff to be a very sick and mentally ill person, incapable of taking care of herself for a sustained period of time, with a craving and almost insane desire to hurt this defendant, all of which this defendant believes is a result of plaintiff's sickness . . ."

2. That while testifying as a witness in his own behalf appellee stated in substance (a) that all allegations set forth in his present Bill of Particulars were true; (b) that based on his own observation and what the doctors told him he believed that appellant's mental sickness was a recurring disease; (c) that at the time of the 1955 reconciliation he was familiar with his wife's mental condition and knew she was mentally disturbed; (d) that after he went back to live with her he kept a daily record of her activities because he was aware of some mental disturbance (these it may be noted were all listed in his Bill of Particulars as supporting his petition for divorce); (e) that since 1951, up to the time of bringing the instant case, he had often discussed appellant's mental illness problem with her and wished that she would take treatment for it; (f) that at those times he looked upon her as needing psychiatric help and treatment; (g) that he had discussed appellant's mental sickness during the period from January 1956 to the present time with Dr. Karl Menninger and Dr. Cooper, psychiatrists.

3. That Dr. Herbert C. Modlin, a physician, specializing in the practice of psychiatry, whose qualifications are not challenged and who was the only expert medical witness produced by either party during the trial, was called as a witness for the appellant. That while on the witness stand he was asked if he had examined a document containing appellee's 1958 Bill of Particulars, which set

out in detail facts related in 1956, 1957 and a portion of 1958; and a document, also attached thereto, likewise called a Bill of Particulars, which set forth detailed facts pertaining to Marjorie Crosby and things and occurrences during the existence of the marriage between Marjorie and Tom Crosby up to and including the year 1955. Upon answering such inquiry in the affirmative, and having stated that he had read such documents, Dr. Modlin then testified as follows:

"Q. Now, Doctor, assuming all of the facts set forth in all of those documents which you stated you have read and examined to be true, do you have an opinion as to whether or not Marjorie Crosby during the time embraced by the documents was suffering from any mental illness or disturbance?

"A. Yes, I do.

"Q. Will you state that opinion?

"A. The evidence included in these documents is suggestive of well-recognized mental illness.

"Q. Will you describe what type or form you would classify it?

"A. The 1955 bill of particulars gives a very good description of what is ordinarily thought of as Maniac Depressive reactions, Hyper Maniac type.

"Q. Could you elaborate a little on what that means?

"A. Yes, maniac depressive reaction is a phrase used to describe people who have rather wide variations in moods, from depression to elation. These variations in moods being partial at times but at other times not at all under their conscious control. The kind of behavior described there suggests recurrence periods of mild elation which we usually call Hyper Maniac which means something less than severe mania, the over activity, the suggestive findings of poor judgment at times, the evidence of excessive drinking, again periodically. The suggestions of deterioration in social manners and habits are all characteristic of this particular kind of illness. The other documents from '55 to the present time are not as clear in describing this particular illness but it gives evidence of a recurrence problem of drinking. As far as abnormal behavior it is based on some sort of psychological depression."

4. That as a witness in her own behalf appellant, without subsequent refutation of any kind on the part of appellee, testified she had been receiving medical treatment at the Menninger Foundation within the last few weeks preceding the trial.

In the face of the foregoing evidence, which for all purposes of this appeal must be regarded as incontrovertible, we are convinced this case comes squarely within the scope of our ruling and decision in *Lindbloom v. Lindbloom,* 177 Kan. 286, 279 P. 2d 243, where, in connection with a factual situation somewhat different but nevertheless so similar the case must be regarded as a precedent controlling our decision of the decisive question here involved, we held:

"It is the duty of a husband to provide and care for his wife in her illness as well as in her health.

"The fact that the wife, in the intervals between temporary hospitalization, and with three small children, ages 3, 2 and 1, and without help the husband was able to provide, did not keep her house or the children as clean as they should have been, did not constitute 'gross neglect of duty' justifying the granting of a divorce to the husband upon that ground." (Syl. ¶¶ 1, 2.)

And in the opinion said:

"In this court counsel for appellant present three questions for our determination. They read:

" '1. Was it error to grant the appellee a decree of divorce from his wife on the ground of gross neglect of duty when the evidence disclosed that appellant had been hospitalized for mental illness in the fall of 1951; in the winter of 1952-1953, and in July of 1953, and when the acts complained of took place between her hospitalizations?'

. . . . . . . . . . . . . .

"With respect to the first question presented we think the answer should be in the affirmative. When parties are married they take each other for better or worse. If the wife should become ill of tuberculosis, cancer, or any other disease, and be unable to perform her household duties as well as she ordinarily would perform them, we would not be willing to say that the husband was entitled to a divorce because of that situation.

. . . . . . . . . . . . . .

"While in this case plaintiff was never adjudged insane, we think the rule stated in the authority last quoted is applicable. What she had was an illness which affected the 'emotions and the moods' for which she was treated as necessity therefor arose." (pp. 296, 297.)

And so here, based on what is said and held in the Lindbloom case, we have little difficulty in concluding that the uncontradicted evidence in this case relating to appellant's mental status on all dates in question was sufficient to preclude appellee from obtaining a divorce from appellant on the ground of gross neglect of duty. It follows the trial court's action in granting him a divorce on that basis is erroneous and cannot be upheld. This, we may add, is so even though the record discloses some testimony which, absent evidence of the mental illness, might otherwise be sufficient to uphold a judgment of that character. Here, according to the record, following a concededly normal, if not ideal, marital relationship of more than twenty years duration, what appellant had was a mental illness affecting her emotions and moods, so serious she received treatment in well-known mental institutions, which was the real cause of the acts of misconduct relied on by appellee as constituting gross neglect of duty during the later years of the

marriage. In that situation we do not believe appellee was entitled to a divorce on that basis and refuse to so hold.

Appellant contends the trial court erred in denying her claim she was entitled to a divorce by reason of appellee's extreme cruelty and gross neglect of duty. We are not disposed to labor arguments advanced on this claim of error. It suffices to say the testimony on the subject is conflicting and that the record discloses substantial competent evidence to sustain the trial court's finding and conclusion the divorce prayed for by appellant in her cross-petition should be denied. This, under our decisions, requires an affirmance of that ruling and judgment. See, e. g., *Paul v. Paul*, 183 Kan. 201, 326 P. 2d 283.

In conclusion it should be stated that appellant also appeals from the judgment entered on May 26, 1959, making provision for permanent alimony, division of property and final allowance of attorneys' fees. These rulings, as we read the record, were all made by the trial court subject to the outcome of the evidence upon the grounds for divorce. In other words, when made, they were based upon the premise the appellee (husband) was entitled to a divorce for the fault of the appellant (wife). Under this court's decision, as heretofore announced, the parties now find themselves in a situation where neither is entitled to a divorce and the trial court is placed in a position where its orders, with respect to the matters now under consideration, should be reconsidered and determined on that basis. Under these circumstances we believe all such orders should be set aside and that, after complying with this court's decision directing a reversal of the divorce decree, the trial court should make such further and additional orders in connection with such matters, including the allowance of reasonable attorneys' fees, as it may deem necessary and proper, under the then existing conditions and circumstances.

The judgment effective April 14, 1959, granting appellee a divorce from appellant is reversed with directions to set it aside; the judgment, effective as of the same date, denying appellant a divorce on grounds set forth in her cross-petition is affirmed; and the orders made by the court in its judgment, effective May 26, 1959, are set aside with directions to proceed as heretofore indicated.

Finally it should be pointed out the court has not overlooked appellant's request that her attorneys be awarded a reasonable

fee for legal services performed on her behalf in the preparation and presentation of the instant appeal. Our ruling on such request has been deferred for further consideration and will be made by separate order.

PRICE, J., not participating.