No. 42,262

THOMAS MAYO CROSBY, *Appellee*, v. MARJORIE ROSEN CROSBY, *Appellant*.

(362 P. 2d 3)

Opinion filed May 13, 1961.

*Lester M. Goodell* and *Harold Doherty*, both of Topeka, argued the cause, and *Margaret McGurnaghan, Marlin S. Casey, Raymond Briman, Thomas R. Sewell, Gerald L. Goodell,* and *James Benfer,* all of Topeka, were with them on the briefs for the appellant.

*James L. Grimes, Jr.,* of Topeka, argued the cause and *M. F. Cosgrove, Robert E. Russell, Willard N. Van Slyck, Jr., William B. McElhenny, O. R. Stites, Jr.,* and *Lawrence D. Munns,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is the second appearance in this court of a divorce case. (See *Crosby v. Crosby,* 186 Kan. 420, 350 P. 2d 796.)

In the case cited the trial court granted the husband a divorce from the wife, denied the wife a divorce, and rendered judgment making provision for permanent alimony, division of property, and allowance of attorneys' fees. In such appeal this court reversed the judgment granting the husband a divorce, affirmed the judg-

ment denying the wife a divorce, and in connection with the other rulings just mentioned said:

"In conclusion it should be stated that appellant also appeals from the judgment entered on May 26, 1959, making provision for permanent alimony, division of property and final allowance of attorneys' fees. These rulings, as we read the record, were all made by the trial court subject to the outcome of the evidence upon the grounds for divorce. In other words, when made, they were based upon the premise the appellee (husband) was entitled to a divorce for the fault of the appellant (wife). Under this court's decision, as heretofore announced, the parties now find themselves in a situation where neither is entitled to a divorce and the trial court is placed in a position where its orders, with respect to the matters now under consideration, should be reconsidered and determined on that basis. Under these circumstances we believe all such orders should be set aside and that, after complying with this court's decision directing a reversal of the divorce decree, the trial court should make such further and additional orders in connection with such matters, including the allowance of reasonable attorneys' fees, as it may deem necessary and proper, under the then existing conditions and circumstances." (p. 426.)

And held:

"The judgment effective April 14, 1959, granting appellee a divorce from appellant is reversed with directions to set it aside; the judgment, effective as of the same date, denying appellant a divorce on grounds set forth in her cross-petition is affirmed; and the orders made by the court in its judgment, effective May 26, 1959, are set aside with directions to proceed as heretofore indicated." (p. 426.)

In conformity with our disposition of the first appeal the trial court retried the case and rendered a judgment which, so far as here pertinent, reads:

"The judgment of this court, rendered April 14, 1959, granting divorce to plaintiff is hereby set aside to conform with the mandate of the Supreme Court.

"The Court is advised that items two and three of the order of May 26, 1959, have already been complied with and therefore cannot be set aside.

"There is no evidence before this court to show that the post-nuptial agreement of November 15, 1955 was not 'fairly and understandingly made'. The agreement settled the property rights of the parties. It is not against public policy and therefore enforceable. (*Perkins v. Perkins,* 154 Kan. 73 l. c. 75-76.)

"The post-nuptial agreement is valid. The division of property is as provided by that agreement. The parties shall retain such personal property, not included in the agreement, as they presently possess. Any personal property remaining in storage shall be divided equally between the parties by their mutual agreement.

"Defendant shall not hereafter incur debts chargeable to plaintiff except by his specific consent.

"Further complying with the mandate of the Supreme Court, plaintiff is ordered to pay defendant's attorneys an additional fee of $2,000.00."

Following rendition of the foregoing judgment the defendant (wife) perfected the instant appeal wherein she states, and the plaintiff (husband) inferentially, if not expressly, agrees, the appellate issues now involved are:

1. Is the postnuptial agreement, executed November 16, 1955, a valid and enforceable agreement?

2. Did the trial court err in failing to award more than an additional $2,000.00 as attorneys' fees for appellant's attorneys?

The opinion in the first case discloses the factual picture necessary to enable readers of this opinion to have a proper understanding of what this case is about. Indeed, it may be said that insofar as the above stated appellate issues are concerned, the evidence in the second trial was substantially, if not identically, the same as in the former case. For that reason the lengthy statement of facts appearing in the first opinion, which we now incorporate in this opinion by reference, will, when implemented by additional facts, not directly involved in the first opinion, suffice to supply the factual background essential to the disposition of the appellate issues here involved.

The supplementary facts required to complete the factual picture, all of which can be said to be established by evidence of record which is uncontroverted and therefore must be considered as decisive of the rights of the parties, may be stated thus:

The postnuptial agreement, found by the trial court to be valid in settling the property rights of the parties, was executed at a time when the appellee believed the appellant to be a very sick and mentally ill person suffering from an illness which had been diagnosed by physicians specializing in the practice of psychiatry as hyper manic-depressive psychosis. Further facts as to the extent of his knowledge regarding her condition at that time are set forth in the first opinion and need not be repeated. Such agreement is somewhat lengthy. Nevertheless since it is highly important to the disposition of the appellate issues involved we believe it advisable to set it out in this opinion in its entirety. Omitting the title and signatures of the parties it reads:

"This agreement, made and entered into this 16th day of November, 1955, by and between THOMAS MAYO CROSBY, of Topeka, Shawnee County, Kansas, Party of the First Part, and MARJORIE ROSEN CROSBY, who is now wife of said

Party of the First Part, of Topeka, Shawnee County, Kansas, Party of the Second Part.

"WITNESSETH: That

"WHEREAS, there is now pending in the District Court of Shawnee County, Kansas, Case No. 77,413, an action for divorce filed by said Party of the Second Part against said Party of the First Part herein, and

"WHEREAS, said Party of the First Part has filed a cross-petition for divorce against said Party of the Second Part, herein, and

"WHEREAS, said Parties have determined to dismiss their respective actions for divorce against each other in Case No. 77,413, above referred to.

"Now THEREFORE, the said parties deem it expedient and desirable to mutually enter into a Post Nuptial Agreement for the purpose of settling all matters pertaining to their property and marriage rights, in the event said parties, subsequent to the date of this agreement, separate, become divorced or discontinue living together as husband and wife.

"IT IS HEREBY UNDERSTOOD AND MUTUALLY AGREED by and between the parties to this agreement, that in the event the said parties, subsequent to the execution of this agreement, separate, become divorced, or discontinue or cease to live together as husband and wife, that then and in that event said Party of the Second Part shall receive as her sole and separate estate the entire income from a trust, to be established, managed and maintained by the Trust Department of the National Bank of Topeka, to be known as the 'MARJORIE ROSEN CROSBY and THOMAS MAYO CROSBY TRUST', consisting of the trust property as shown on Schedule A and Schedule B attached hereto and made a part hereof, and subject to the provisions hereinafter made.

"IT IS FURTHER UNDERSTOOD AND AGREED that the said parties hereto shall do any and all acts necessary to properly transfer the above described property to the Trust Department of the National Bank of Topeka, as Trustee of said property, during the term of this trust, which trust shall be revocable only upon the mutual consent of both parties in writing, except as hereinafter provided.

"IT BEING FURTHER UNDERSTOOD AND AGREED that the said Trustee shall have full and complete power, control and authority over said trust property except that said Trustee may with the joint consent in writing of the parties hereto, sell and reinvest said trust properties for the best interest of said trust.

"IT IS FURTHER AGREED that said Trustee shall, during the tenure of said trust, deliver to said Party of the Second Part, quarterly, all of the income received by said Trustee from said trust estate; provided, however, that in the event the parties hereto are divorced and Second Party shall re-marry, then the Trustee shall pay one-half of the income received from said trust to Party of the Second Part and one-half of the income received from said trust to Party of the First Part, so long as either of said parties shall live. On the death of the Party of the Second Part, if Party of the First Part is living, then the trustee shall pay one-half of the income from said trust, share and share alike, to the children of the parties hereto, Marjorie Crosby Miville and Marianne Crosby, and continue to pay the other one-half of the income to Party of the First Part. If Party of the First Part shall die and Party of the Second Part shall have remarried and be still living then the Trustee shall distribute

one-half of the income from said trust to Party of the Second Part, and one-half of the income to the children of the parties hereto, Marjorie Crosby Miville, and Marianne Crosby. Income as used herein shall be income available after payment of necessary expenses incident to administration of the trust.

"Upon the death of the last survivor of the parties hereto, this trust shall terminate and the Trustee shall distribute the entire corpus of the Trust, together with any accumulated income therefrom remaining in its hands after the payment of necessary expenses, to the children of the parties hereto, Marjorie Crosby Miville and Marianne Crosby, share and share alike, or if either of them be deceased and leave children surviving them, the surviving child or children of the deceased parent shall take the share their parent would have taken had she been living.

"The principal of this trust shall remain intact, except that should Party of the Second Part require extended hospitalization and the income she received from said trust shall be insufficient to pay the expense of her hospitalization, then the Trustee is authorized, empowered and directed to use such portion of the principal of said trust as may be necessary to provide the reasonable expenses of such extended hospitalization.

"It is Further Mutually Agreed that in the event Party of the First Part, subsequent to the date of this agreement, divorces said Party of the Second Part, or dies, the said Party of the Second Part, unless she remarries, shall receive, in addition to the benefit of the income of the Trust, as herein provided, an additional $100.00 per month from said Party of the First Part, until said Party of the Second Part attains the age of fifty-five (55) years, at which time said payment shall cease.

"It is Further Stipulated and Agreed by and between the said parties hereto that, except as herein provided, the said Thomas Mayo Crosby is to have and receive as his sole and separate estate free and clear of all claims of said Marjorie Rosen Crosby, all of the real and personal property which he had and possessed before the date of this settlement, with the exception of the property described in Schedule A and Schedule B, which he relinquished, subject to the terms herein, to said Party of the Second Part, in consideration of her relinquishing all of her right, title and interest in and to all of the real and personal property which said Party of the First Part possessed at the date of this agreement. Said real estate consisting of the following described property.

"Residence at 1545 Stratford Rd., Topeka, Kansas
"2 Kinney Buildings
"Part Interest in Parking Lot—608 Jackson
"Nightingale Building

"This agreement and conveyance is mutually intended to be, and is hereby expressly made and intended by each of the parties hereto, as a mutual release, agreement, relinquishment and conveyance of all right, title and interest to all of the property, both personal and real, of the other, respectively, and it is the intention of the parties hereto to mutually release and waive all benefits of the Laws of the State of Kansas relating to husband and wife, dower and homestead, etc., except as herein provided.

"It Being Further Mutually Agreed that in the event a divorce shall hereafter be granted in any court, to either of the above parties, this settlement

shall by the court granting said decree, become a part of said decree, and be incorporated in the same, and said settlement shall be binding on the heirs, executors, administrators, and assigns of both of said parties, and said settlement is not to be altered, modified, changed or varied without the written consent of both parties.

"IT IS MUTUALLY AGREED that upon the death of said Party of the Second Part, this trust shall terminate and the property then remaining in the hands of said Trustee shall be paid over, delivered and assigned, share and share alike, to Mrs. Marjorie Crosby Miville, and Marianne Crosby, if living, and if not living, to their surviving issue, if any, otherwise to the survivor. Provided further, that said trust fund shall not, under any circumstances, be paid over or assigned to said parties until the youngest of said parties has attained the age of twenty-five years.

"IT BEING FURTHER MUTUALLY AGREED that in the event the said parties continue to live together from the date of this agreement during the rest of their natural lives as husband and wife, and until such time as one or the other may die, then and in that event this agreement shall be of no effect whatsoever, and said parties shall be entitled to inherit one from the other, the same as though this agreement had never been executed.

"This agreement shall be binding on the parties hereto, their heirs, executors, administrators, successors and assigns.

"To faithful compliance of the above and foregoing, the parties hereto have executed this agreement the day and year first above written.

"SCHEDULE A

|  | Shares | At |  |
|---|---|---|---|
| Kansas Power & Light | 520 | 24.00 | 12,480.00 |
| A. T. & T | 68 | 183⅞ | 12,503.84 |

"SCHEDULE B

| A. T. & T | 64 | 183⅞ | 11,768.00 |
|---|---|---|---|
| Santa Fe Pref. | 148 | 60¼ | 8,917.00 |
| Kansas Power & Light | 480 | 24.00 | 11,520.00 |
| J. C. Penney | 39 | 93¾ | 3,656.25 |
| U. S. Steel | 174 | 51⅝ | 8,982.75 |
| Van Raalte | 52 | 38.00 | 1,976.00 |
| Stnd. Oil Cal. | 82 | 89⅜ | 7,328.75." |

On the date of the execution of the agreement (November 16, 1955) all shares of stock listed in Schedule "B" of that instrument were owned by the appellant who had received them, from time to time, from the appellee's mother as gifts in appreciation for appellant's services in caring for the mother during an extended illness. The shares of stock described in Schedule "A" stood in the name of the appellee. The value, at that time, of all shares of stock encumbered under the agreement, is conceded to be as listed in the two schedules.

On May 5, 1959, appellee, with reference to an appraisal made

on January 23, 1959, of the real and personal property of both appellant and appellee, testified that such appraisal "setting forth that my property interests are worth $485,008.36 is true and correct to the best of my knowledge." In all fairness it should be stated this appraisement included the appellant's shares of stock as encumbered by Schedule "B" of the 1955 agreement at a valuation of $69,303.25. It also included other items of personal property, then in her possession, which had been accumulated during the marriage, the value of which was appraised at approximately $5,800.00. By the same token it should be said that title to all other real and personal property listed in the appraisal, the value of which was appraised at approximately $410,000.00, stood in the name of the appellee, who had acquired some of it by inheritance and the remainder during the course of the marriage. Included in this remainder was $45,000.00 received and personally retained by the appellee when he sold the family home, the appellant joining in the conveyance, within fifteen months after the execution of the postnuptial agreement and subsequent reconciliation of the parties.

With further reference to the trust agreement it is interesting, and quite important, to note that appellee, in procuring the execution of that instrument, was able to induce appellant to encumber practically all of the property owned by her, then amounting to approximately $53,000.00, whereas out of the property standing in his name and valued at $410,000.00, the only contribution made by him to the trust, and encumbered under its terms, was property valued at approximately $25,000.00.

Having related the supplementary facts required for disposition of the first appellate issue involved, we now refer briefly to the undisputed evidence relating to the second, noting as we do so that, since the appellee made no attempt to refute it, this evidence must also be regarded as uncontroverted.

In connection with the second issue to the effect the trial court erred in failing to award more than the additional $2,000.00 attorneys' fees allowed after the first case was reversed and sent back for the trial court's further review, the record discloses that, throughout the course of this litigation, five well-recognized and competent attorneys of Topeka, i. e., Lester M. Goodell, Marlin S. Casey, Gerald L. Goodell, Harold Doherty, and James Benfer, were employed by appellant and actively participated in the defense of the divorce action brought against her by the appellee. It also contains a state-

ment showing the extent of their activities in this respect, as well as a photostat copy of the appearance docket of the case in the Shawnee County district court which contains approximately one hundred entries. Without detailing the contents of the statement or the appearance docket it may be stated these instruments make it affirmatively appear this has been a long-standing, hotly contested and tedious case, requiring the preparation of numerous motions and pleadings; extended research; consultations and conferences, both preparatory to and during the trial of the case; and the expenditure of further indescribable time and effort on the part of all the attorneys involved in the case. · Indeed the evidence, no part of which has ever been contradicted or denied, is that, in carrying on appellant's case in the district court, five separate attorneys have participated in rendering legal services in her behalf, in the performance of which they have, in the aggregate, spent in excess of six hundred hours time.

The record further discloses evidence by four outstanding and experienced attorneys of Topeka, two being interested and two disinterested in the outcome of the case, that the reasonable value of the legal services performed by appellant's attorneys, in her behalf from the commencement of the action to the present time in the district court, would be all the way from $12,000.00 to $16,500.00. In this connection it must be remembered that these estimates as to the reasonable value of the services of appellant's counsel are undenied and uncontradicted, and that in no stage of the proceedings has appellee seen fit to adduce, or attempted to adduce, evidence to establish that a reasonable fee for such services would be less than that estimated by the witnesses to whom we have just referred.

With the essential facts established, especially since we have been cited to, and our own research discloses, no case of this court so similar from the standpoint of facts and circumstances involved it could be regarded as a controlling precedent, nothing would be gained by laboring our decisions or the reasons on which the six Justices of this Court participating in this opinion have unanimously decided this case must be reversed. Without doing so it suffices to say:

1. That mindful of the established rule the validity of a postnuptial agreement will be upheld where it is fairly and understandingly made, is just and equitable in its provisions, and is not obtained

by fraud and overreaching (See, e. g., *In re Estate of Beeler*, 175 Kan. 190, 193, 262 P. 2d 939; *Fincham v. Fincham*, 160 Kan. 683, 687, 165 P. 2d 209; *Perkins v. Perkins*, 154 Kan. 73, 76, 114 P. 2d 804), this court, under all the facts and circumstances of this case, particularly those relating to the mental status of the appellant prior to, and on the date of, the execution of the heretofore quoted postnuptial agreement, as well as those disclosing the disproportionate contributions of property made by the parties to the trust created by its terms, is convinced that at the time of the execution of such agreement it was not fairly and understandingly made, was not just and equitable in its provisions, and, of a certainty, was obtained by overreaching on the part of the appellee at a time when, according to his own verified statements and admissions, he knew appellant was a very sick and mentally ill person. Moreover, having held in *Crosby v. Crosby*, 425, supra, "that the uncontradicted evidence in this case relating to appellant's mental status *on all dates in question* was sufficient to preclude appellee from obtaining a divorce from appellant on the ground of gross neglect of duty." (emphasis supplied.), we are fully satisfied that her mental status on November 16, 1955, one of the dates then in question, was of such nature that she could not, and hence did not, fairly and understandingly make the heretofore quoted postnuptial agreement on the date of its execution. It follows such agreement cannot be upheld and that the trial court erred in holding it was binding upon the parties, settled their property rights and therefore warranted it in making a division of their property in substantial accord with its terms.

2. That fully cognizant of the rule (see *Bennett v. Bennett*, 175 Kan. 692, 698, 266 P. 2d 1021), the allowance of fees to a wife's attorney for an efficient preparation of her case rests largely in the discretion of the trial court which will not be disturbed on appellate review when supported by competent testimony, we are nevertheless convinced that in the face of (1) all the facts and circumstances disclosed in *Crosby v. Crosby*, supra, and in this opinion; (2) the direction of this Court in *Crosby v. Crosby*, supra, that a further order should be made in the cause allowing reasonable attorneys' fees; (3) the uncontroverted evidence, as heretofore set forth, relating to the reasonable value of services performed by appellant's attorneys in the court below; and (4) the failure of appellee to produce any evidence whatsoever contradicting the

evidence regarding the reasonable value of such services, the trial court abused its judicial discretion in limiting its order fixing an additional fee for services performed by appellant's attorneys to an allowance of $2,000.00.

Based on what has been heretofore stated and held the judgment holding the postnuptial agreement of November 16, 1955, to be valid and determinative of the property rights of the parties is reversed; the order and judgment making a division of the property of the parties, based on the provisions of the agreement, is reversed; and the order limiting appellant's attorneys to the sum of $2,000.00, as an additional fee for services, is reversed, with directions to the district court of Shawnee County to give further consideration, in accord with the views herein expressed, to an equitable division and disposition of the property of the parties and to the allowance of reasonable attorneys' fees for services performed by appellant's attorneys in the defense of the action in district court.

It is so ordered.

PRICE, J., not participating.